# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PATTON,<br>CDCR #AV-5870,<br><br>                               Plaintiff,<br><br>   vs.<br><br>OFFICER FLORES, et al.<br><br>                              Defendants. | Case No.: 3:19-cv-00659-WQH-LL<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND 28 U.S.C. § 1915A(b)** |

## I.    Procedural History

On April 8, 2019, Plaintiff Michael Patton, who is currently incarcerated at California State Prison- Los Angeles County ("LAC") and proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. Patton's original 126-page Complaint named 15 Defendants—all correctional officials at Richard J. Donovan Correctional Facility ("RJD") in San Diego.[1] In the body of his pleading, Patton invoked his constitutional rights to be free from acts of retaliation, excessive force, conspiracy, and

---

[1] The RJD officials originally named as parties were Flores, Resler, Palamino, Anderson, Billingsley, Terronez, Miller, Aruki, Dias (or Diaz), Casas, Williams, Hernandez, Garcia, Lewis, and Corcoran. (*See* Compl., ECF No. 1 at 1-5.)

1

harassment at the hands of the RJD officials, but he included very few factual allegations as to each individual Defendant, and instead merely attempted to "incorporate[] [them] by reference" to the hundreds of pages of exhibits and administrative appeals he attached "for a more comprehensive account" of his claims. (*See* Compl., ECF No. 1 at 1-11; 16-123.)

On June 5, 2019, the Court granted Patton leave to proceed *in forma pauperis* ("IFP"), but dismissed his Complaint *sua sponte* both for failing to include a "short and plain statement" of his claims as required by Federal Rule of Civil Procedure 8(a)(2), and for failing to state a claim upon which relief could be granted pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). (*See* ECF No. 5.) Patton was granted leave to file an amended pleading that complied with Rule 8 and corrected the other specific pleading deficiencies the Court was able to identify. (*Id.* at 6-11.) Patton was specifically cautioned, however, that any "[d]efendants not named and any claim not re-alleged in his Amended Complaint w[ould] be considered waived." (*Id.* at 11 (citing S.D. Cal. CivLR 15.1); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled")).

On July 1, 2019, Patton filed his First Amended Complaint ("FAC") (ECF No. 4). While the caption of his FAC identifies only 6 of the originally-named Defendants, (*see* FAC at 1-2), Patton makes at least some reference to almost all of the original Defendants in the body of his pleading.[2] (*See id.* at 3, 9-11, 13.)

---

[2] Rule 10(a) of the Federal Rules of Civil Procedure requires plaintiffs to specifically name each defendant in the caption of his complaint. "The title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). While attaching the ambiguous phrase "et al." to the caption of a complaint suggests that the plaintiff wishes to sue other persons, a defendant is not presumed a party to the action if he is not served or named in the caption, unless he is specifically and sufficiently identified later in the body of the complaint. *See Ferdik v.*

**II. Screening of FAC pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)**

A. Standard of Review

As Patton now knows, because he is a prisoner and is proceeding IFP, his FAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Williams v. King*, 875 F.3d 500, 502 (9th Cir. 2017) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc)) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). A complaint is "frivolous" if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668

---

*Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Rice v. Hamilton Air Force Base Commissary*, 720 F.2d 1082, 1085 (9th Cir. 1983) (citing *Hoffman v. Halden*, 268 F.2d 280, 303-304 (9th Cir. 1959)) ("[A] party may be properly in a case if the allegations in the body of the complaint make it plain that the party is intended as a defendant."); *see also Greenwood v. Ross*, 778 F.2d 448, 451-52 (8th Cir. 1985) (failure to list a defendant in the caption does not mean the action cannot be maintained against him where he is identified in the body of the complaint); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Because Patton is proceeding without counsel, the Court will assume, for purposes of screening his FAC, that he intends to pursue his claims as to all the RJD officials originally named as Defendants. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.3d 621, 623 (9th Cir. 1988) (court must construe civil rights cases filed in pro se liberally "and must afford plaintiff the benefit of any doubt").

F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. <u>Plaintiff's Allegations</u>

Patton divides his FAC into five separate "Counts," but he includes multiple and seemingly unrelated causes of action in each. For example, in Count 1, Patton claims Defendants Billingsley, Resler, and Terronez conducted a retaliatory cell search and sometimes "skipp[ed] [his] cell for a shower" after he filed a complaint against Defendant Miller on May 15, 2017, for "ma[king][him] miss [a] religious service." (*See* FAC at 3.) Patton, who is a double leg amputee and uses a wheelchair, further contends that from June 9, 2017, until August 14, 2017, Tower Officers Ariko and Diaz inflicted cruel and unusual punishment upon him by "us[ing] the [cell] door to hold and squeeze [his] wheelchair" when he attempted to enter or exit. (*Id.*)

In Count 2, Patton claims Officer Casas confronted him with "extreme hostility" and in a belligerent, intimidating, and aggressive manner on August 10, 2017, for leaving the law library in order to use the restroom. (*Id.* at 9.) Patton has "notice[d] [Casas] treats black [inmates] with hostility," but not inmates of her own race. (*Id.*)

4

3:19-cv-00659-WQH-LL

In Count 3, Patton alleges T. Williams, a dental hygienist, "stab[bed] [him] in the gums," caused blood to "gush" out of his mouth, and spoke to him in a hostile, threatening, and belligerent manner during a September 29, 2017, dental exam. (*Id.* at 10.) Patton faults Williams for failing to use an anesthetic to numb his gums by claiming it was not necessary. (*Id.*) Patton contends Williams "thought it was amusing," but it instead caused him pain, suffering, and emotional distress. (*Id.*)

In Count 4, Patton claims E. Garcia opened a "legal letter" when she delivered the mail to his cell on May 15, 2018. (*Id.* at 11.) Afterward, Patton filed a complaint regarding the incident, but Sgt. Lewis "convince[d] him it didn't even happen." (*Id.*)

Finally, in Count 5, Patton claims Counselor Flores "sen[t] [him] a ducat" for an Institutional Classification Committee ("ICC") hearing on September 13, 2018, just one day after he filed a citizen's complaint against Officer Corcoran for "speaking to [him] in a mean-spirited manner." (*Id.* at 13.) Patton claims that while "many inmates wait[] 6 months" before they appear before an ICC, the ICC approved his transfer to LAC on October 4, 2018, in "retaliation" for the complaint he filed against Corcoran and Flores, whom he claims are "good friends." (*Id.*)

Based on these facts, Patton alleges Defendants engaged in a conspiracy to violate his First, Fifth,[3] Eighth, and Fourteenth Amendment rights, as well as "ADA law." (*Id.* at 3, 9, 10, 13.) He seeks injunctive relief prohibiting the RJD Defendants from "harassing, threatening, punishing, or retaliating in any way against him,"[4] as well as compensatory

---

[3] Patton invokes the Fifth Amendment with respect to Count 2, but not even the most liberal construction of his factual claims with respect to Defendant Casas would support any Fifth Amendment violation. *See e.g., Baxter v. Palmigiano*, 425 U.S. 308 (1976) (finding no Fifth Amendment compulsion where inmate faced 30 days in punitive segregation and downgrade of prison classification status if he remained silent at prison disciplinary hearing).

[4] Because Patton is no longer incarcerated at RJD, his claims for injunctive relief are moot. *See Pride v. Correa*, 719 F.3d 1130, 1138 (9th Cir. 2013) (citing *Johnson v. Moore*, 948

and punitive damages from each of them. (*Id.* at 16.)

C.  42 U.S.C. § 1983

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

D.  Conspiracy

As an initial matter, the Court notes Patton re-alleges the existence of a "conspiracy" "starting from 5/15/17" with respect to all the allegations raised in Count 1 of his FAC. (*See* FAC at 9.) He also claims "conspiratorial" actions taken by Counselors Corcoran and Flores "by way of proxy [and] collusion," with respect to his transfer to LAC in Count 5. (*Id.* at 13.)

The Court advised Patton in its June 5, 2019 Order, however, that in order to state a conspiracy claim under section 1983,[5] his FAC must contain sufficient "factual matter,"

---

F.2d 517, 519 (9th Cir. 1991)) ("When an inmate challenges prison conditions at a particular correctional facility, but has been transferred from the facility and has no reasonable expectation of returning, his claim [for injunctive relief] is moot."); *see also Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *Darring v. Kincheloe*, 783 F.2d 874, 876-77 (9th Cir. 1986).

[5] Patton also cites 42 U.S.C. § 1985 in Count 1, but "[t]o state a cause of action under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)). In a § 1985(3) claim, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

and not simply offer "naked" and conclusory assertions, *Iqbal*, 556 U.S. at 678, to plausibly show: "(1) the existence of an express or implied agreement among the defendant officers to deprive [the plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (internal quotation marks omitted); *Klein v. Williams*, 714 F. Appx 631, 636 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 76 (2018); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001).

But the allegations of conspiracy in Patton's FAC remain "unadorned," and thus still fail to provide any factual enhancement to show that any of the named Defendants entered into an express or implied agreement to violate his constitutional rights. *See Iqbal*, 556 U.S. at 678; *Avalos*, 596 F.3d at 592; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level....") (citations omitted). A plaintiff must set forth "the grounds of his entitlement to relief ," which "requires more than labels and conclusions," and "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp.*, 550 U.S. at 555, 557).

"[V]ague and conclusory allegations of official participation in civil rights violations," without more, simply fail to state a claim upon which § 1983 or § 1985 relief can be granted. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir.1982); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (conclusory allegations of conspiracy insufficient to support a claim under § 1983 or § 1985).

For these reasons, Patton's conspiracy claims as to all Defendants must again be dismissed *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and § 1915A(b)(1).

---

conspirators' action." *Griffin*, 403 U.S. at 102; *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001) (finding dismissal of a § 1985(3) claim proper because plaintiff failed to state a claim for racial discrimination). While Patton mentions his physical disabilities with respect to Count 1, his FAC fails to allege any racially discriminatory animus.

E.   First Amendment Claims

   **1.   *Retaliation***

Also in Counts 1 and 5, Patton re-alleges acts of retaliation taken against him after he filed administrative grievances and citizens' complaints. (*See* FAC at 3, 13.) In Count 1, Patton claims "because [he] filed a complaint [against] Officer Miller," Officers Terronez, Billingsley, and Resler searched his cell, and Billingsley "skipp[ed] [his] cell for shower[s]." (*Id.* at 3.) In Count 5, Patton claims Counselors Flores and Corcoran "punish[ed] [him] thr[ough] [a] classification action" "in retaliation for [his] constitutionally protected rights for complaining against fellow staff." (*Id.* at 13.)

As the Court also noted in its June 5, 2019, Order, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

First, Patton must allege that the conduct for which he claims to have been subject to retaliation is protected.[6] *Watison*, 668 F.3d at 1114. Second, he must allege facts sufficient to plausibly show the Defendants took adverse action against him.[7] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Patton's FAC must contain sufficient factual content to show a causal connection between the adverse action and his protected conduct.[8] *Watison*, 668 F.3d at 1114. Fourth, he must allege the "official's acts would

---

[6] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

[7] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

[8] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to

chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[9] Finally, Patton must plead facts from which the Court could draw the reasonable inference that "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15; *Iqbal*, 556 U.S. at 678.

As was true of his original Complaint, Patton's FAC contains facts to plausibly support the first two elements of a retaliation claim against Officers Miller, Terronez, Billingsley, and Resler with respect to Count 1, and against Counselors Flores and Corcoran with respect to Count 5. But he falls far short of pleading the necessary causation element or any of the other remaining elements necessary to support either retaliation claim.

First, Plaintiff offers no facts to suggest that Billingsley, Terronez, or Resler were aware of the grievance he claims to have filed against Miller for "mak[ing] him miss religious service," or how that protected conduct served as the motivation behind his cell search or missed showers. (*See* FAC at 3.) In short, he continues to offer no plausible factual allegations which tie the actions of Billingsley, Terronez or Resler with the grievance he filed against Miller. *Watison*, 668 F.3d at 1114; *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (retaliation claims requires a showing that plaintiff's protected conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct").

///

---

survive dismissal. *Watison,* 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

[9] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11.

9

Patton also does not allege facts to show why the actions of Billingsley, Terronez and Resler "would chill or silence a person of ordinary firmness from future First Amendment activities," *Rhodes*, 408 F.3d at 568, or that he "suffered some other harm," as a result of having his cell searched or being skipped over for showers, that was "more than minimal." *Brodheim*, 584 F.3d at 1269; *Rhodes*, 408 F.3d at 568 n.11. Finally, Patton fails to allege that either his cell search or Billingsley's alleged interference with his shower schedule "failed to advance a legitimate goal of the correctional institution." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

Patton's retaliation allegations against Counselors Corcoran and Flores in Count 5 similarly fail to provide sufficient factual content to plausibly connect his September 11, 2018, citizen's complaint against Corcoran with the ICC's subsequent decision to transfer him to LAC on October 4, 2018. (*See* FAC at 13.) Patton claims only that Flores and Corcoran are "friends," and that Flores delivered the ducat notifying him of an ICC hearing two days after he complained that Corcoran acted in a "mean-spirited manner." (*Id.* at 13.) But bare speculation that a transfer is retaliatory is insufficient to support a claim for relief, *see McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011), and the mere timing of his ICC hearing by itself is insufficient to satisfy the causal element of this retaliation claim. *See e.g., Huskey v. City of San Jose*, 204 F.3d 893, 900 (9th Cir. 2000) (noting that retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, *i.e.*, "after this, therefore because of this"); *see also Jenkins v. Caplan*, No. C 02-5603 RMW (PR), 2012 WL 12904629, at *6 (N.D. Cal. Mar. 30, 2012), *aff'd*, 548 F. App'x 505 (9th Cir. 2013). Moreover, Patton does *not* allege that either Corcoran or Flores were members of his ICC, or that his complaint against Corcoran—or against any other Defendant for that matter—was the substantial or motivating factor behind the ICC's determination to transfer him, or that his transfer failed to advance any legitimate penological goal. *See Watison,* 668 F.3d at 1114-15.

For these reasons, the Court finds Patton's FAC still fails to allege facts sufficient to state a plausible claim of retaliation in violation of the First Amendment. *See* 28

10

3:19-cv-00659-WQH-LL

U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1).

### 2. *Mail*

In Count 4, Patton claims Defendant E. Garcia violated his First Amendment rights on May 15, 2018, by opening and delivering to his cell a piece of his "legal mail" "while [he] watched," and by thereafter failing to follow the "procedure," which required him to sign for it. (*See* FAC at 11.)

Prison officials may "open and inspect" mail sent to an inmate. *Nordstrom*, 762 F.3d at 909 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974)). But prisoners retain "a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1211 (9th Cir. 2017); *see also Mangiaracina v. Penzone*, 849 F.3d 1191, 1196-97 (9th Cir. 2017). Mail to and from a court or other government agency is not normally considered "legal mail," however. *See O'Keefe v. Van Boening*, 82 F.3d 322, 326 (9th Cir. 1996) (a prison need not treat all mail sent to/from government agencies and officials as legal mail); *see also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (concluding that mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail), *amended on denial of rehr'g*, 135 F.3d 1318 (9th Cir. 1998).

Here, Patton claims Defendant Garcia opened and inspected a letter from the University of California, Davis School of Law's Civil Rights Clinic outside his cell, but *in his presence* on May 15, 2018. He admits Garcia delivered that mail to him, but contends she improperly failed to make him sign for it.[10] (*See* FAC at 11-12.) However,

---

[10] The envelope Patton attaches to his FAC, which includes a return address at UC Davis School of Law's Civil Rights Clinic, while perhaps meeting the definition of "legal mail" under CDCR regulations, does not qualify as "legal mail" entitled to federal constitutional protections. *See Mann,* 846 F.2d at 590-91. Moreover, to the extent Patton bases this claim on Garcia's alleged failure to comply with an unidentified CDCR regulation requiring his signature, *see* FAC at 11, the violation of state prison regulations does not by itself establish a federal constitutional violation. *Cousins v. Lockyer*, 568 F.3d 1063, 1070-71 (9th Cir. 2009); *see also Hammler v. Haas*, No. 215CV2266JAMACP, 2019 WL 2285071, at *2

mail from public agencies and officials, *civil rights groups*, and the news media, however, is not "legal mail," and it may be opened even outside a prisoner's presence. *Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (per curiam) (emphasis added); *accord Parent v. Dep't of Pub. Safety*, No. CV 18-00504 JAO-RLP, 2019 WL 573412, at *4 (D. Haw. Feb. 12, 2019). Patton also contends the mail was a "legal letter from [an] attorney," and he attaches several letters from Rosen Bien Galvan & Grunfeld LLP as exhibits. But these letters, while they *are* captioned as "Confidential – Legal Mail," are dated August 29, 2017, October 8, 2018, and November 10, 2018. (*See* FAC at 4-6.) Therefore, none of them could have possibly been the "legal mail" Patton faults Garcia for improperly opening on May 15, 2018. (*Id.* at 3.)

Thus, because Patton fails to allege that any properly marked confidential legal mail was opened *outside* his presence, his FAC fails to state a plausible First Amendment claim against Garcia and Count 4 must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) and § 1915A(b)(1).

### F. Eighth Amendment Claims

#### 1. *Verbal Harassment and Abuse*

In Counts 2, 3, and 5 Patton continues to claim Defendants Casas, Williams, and Corcoran acted with "extreme hostility," were "abusive," "confrontational," "intimidating," "aggressive," and "belligerent" toward him, "brow-beat" him, and spoke to him in "a very mean[-]spirited manner." (*See* FAC at 9, 10, 13.)

However, as the Court advised Patton in its June 5, 2019, Order, verbal harassment, abuse, and threats, without more, are "not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983." *Freeman v. Arpaio*, 125 F.3d 732, 738 (9th

---

(E.D. Cal. May 29, 2019). "A prison may set a higher standard than that required by the First Amendment, but doing so does not elevate a violation of a prison policy into a constitutional claim." *Blaisdell v. Dep't of Pub. Safety*, 2014 WL 5581032, at *6 (D. Haw. Oct. 31, 2014) (citing *Mann*, 855 F.2d 639, at 640); *Kakowski v. Cty. of Sacramento*, No. 216CV2549JAMACP, 2019 WL 3253919, at *4 (E.D. Cal. July 19, 2019).

Cir.1997) (internal quotation marks and citations omitted), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir.1987); *Keenan*, 83 F.3d at 1092 (holding verbal harassment, standing alone, does not violate the Eighth Amendment); *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (Eighth Amendment protections "do not necessarily extend to mere verbal sexual harassment"); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 903-04 (N.D. Cal. 2004).

Such conduct, while unprofessional, and impertinent, does not constitute the "unnecessary and wanton infliction of pain" required to sustain an Eighth Amendment violation as a matter of law. *See, e.g., Blueford v. Prunty*, 108 F.3d 251, 256 (9th Cir. 1997) (affirming summary adjudication in favor of the prison officials where "the only arguably sexually harassing conduct . . . was verbal"); *Zavala v. Barnik*, 545 F. Supp. 2d 1051, 1059 (C.D. Cal. 2008) (finding comments about plaintiff's racial, ethnic, or alienage background insufficient to state a claim), *aff'd sub nom. Zavala v. Bartnik*, 348 F. App'x 211 (9th Cir. 2009).

### 2. *Excessive Force*

In addition to his claims of conspiracy and retaliation with respect to Count 1, Patton also claims Tower Officers Ariko and Diaz violated his right to be free from cruel and unusual punishment by "us[ing] the door [of his cell] to hold and squeeze [him] in his wheelchair." (*See* FAC at 3.)

To state a claim for damages under 42 U.S.C. § 1983 based on the Eighth Amendment's prohibition of cruel and unusual punishment through the use of excessive force, a prisoner's allegations must meet certain tests. The "core judicial inquiry" focuses on ". . . the nature of the force—specifically, whether it was nontrivial and "was applied . . . maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Only unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson*, 503 U.S. at 5 (citations omitted).

13

For claims of excessive physical force, courts look to "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. Not "every malevolent touch by a prison guard gives rise to a federal cause of action," and "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force . . . ." *Id.* at 9-10 (internal quotations and citations omitted). Thus, only force which is employed "maliciously and sadistically to cause harm" rises to the level of an Eighth Amendment violation. *Id.* at 7. An inmate who "complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 537-38 (quoting *Hudson*, 503 U.S. at 9; *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Here, Patton contends only that Tower Officers Ariko and Diaz would "hold" and "squeeze" his wheelchair when he was "coming out of [his] cell or going in," and that this caused him to suffer "shame, humiliation, emotional distress, [and] embarrassment." (*See* FAC at 3.) But Patton does not include any facts to plausibly suggest Ariko and Diaz operated his cell doors "maliciously and sadistically to cause [him] harm," nor does he allege to have suffered any physical injury whatsoever. *See e.g., Graves-Bey v. Hedgepeth*, No. 108CV01718LJOGSAPC, 2009 WL 4716039, at *2 (E.D. Cal. Dec. 3, 2009) (finding prisoner's "bare allegation of having the [cell] door closed on his face" and his failure to allege any injury as a result insufficient to state a plausible Eighth Amendment excessive force claim); *see also* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."). Accordingly, to the extent Patton seeks § 1983 relief based on claims that Defendants Ariko and Diaz imposed cruel and unusual punishment upon him in violation of the Eighth Amendment, his allegations simply fail to state a claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

///

### 3. *Dental Care*

Patton's allegations involving Dental Hygienist T. Williams in Count 3 also fail to "state a[n] [Eighth Amendment] claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Inc.*, 550 U.S. at 570).

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Patton to plead facts sufficient to show (1) "a 'serious medical need' by demonstrating that failure to treat [his] condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096.

"Serious medical needs can relate to 'physical, dental and mental health.'" *Edmo v. Corizon, Inc.*, __ F.3d __, No. 19-35017, 2019 WL 3978329, at *19 (9th Cir. Aug. 23, 2019) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)). But a prison official does not act in a deliberately indifferent manner unless she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Edmo*, __ F.3d at __, 2019 WL 3978329, at *20 (citations omitted). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), is present in cases where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need," and where the indifference is alleged to have caused harm. *Jett*, 439 F.3d at 1096. The alleged indifference to medical needs must also be

substantial; inadequate treatment due to malpractice, or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).

Here, Patton fails to allege facts sufficient to support either the objective or the subjective components of an Eighth Amendment inadequate medical care claim. He provides no "factual enhancement" describing the nature of his dental needs whatsoever. *See Iqbal*, 556 U.S. at 678. Instead, he simply claims to have reported to the dentist on September 29, 2017, and to have been treated by Williams, a hygienist, who "looked in [his] mouth" and "proceeded to stab [his] gums" without first administering any "numbing medicine." (*See* FAC at 10.) Without more, Patton's FAC fails to allege any facts to show either that his dental condition was sufficiently serious or that Williams' alleged failure to employ an anesthetic was a decision taken with knowledge of and disregard to any excessive risk to his health or safety. *Farmer*, 511 U.S. at 837.

At most, Patton's charge against Williams' alleged course of treatment or methodology amounts either to a difference of opinion as to his particular medical need—which he does not describe—or to a failure to respond reasonably under the circumstances. But neither rise to the level of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Edmo*, __ F.3d at __, 2019 WL 3978329, at *20 ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.") (citations omitted); *see also Tatum v. McGuinness*, No. CIVIL 08-0925 JAH (P), 2009 WL 112379, at *2 (E.D. Cal. Jan. 14, 2009) (finding claims that prison medical official improperly administered anesthesia failed to rise to the level of deliberate indifference and dismissing Eighth Amendment claims pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A).

16

3:19-cv-00659-WQH-LL

### G. Fourteenth Amendment Claims

Patton also cites the Fourteenth Amendment with respect to Counts 2, 3, 4, and 5, and implies Defendants discriminated against him based on either his disability or his race. (*See* FAC at 9, 11.)

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne, Tex. v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). An equal protection claim is pleaded by alleging that a defendant intentionally discriminated against the plaintiff based on his membership in a protected class, *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or by alleging facts sufficient to plausibly show that similarly situated individuals were intentionally treated differently absent a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Patton alleges he is disabled, but he does not allege he was discriminated against because he is a member of any protected class. *Serrano*, 345 F.3d at 1082; *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997) (citing *City of Cleburne*, 473 U.S. at 446) ("The physically disabled are not a protected class for purposes of equal protection under the Fourteenth Amendment."). He also fails to allege other prisoners "similarly situated" were treated differently or that any disparate treatment lacked a legitimate purpose. *See McCollum v. Cal. Dept. of Corr. and Rehab.*, 647 F.3d 870, 880-81 (9th Cir. 2011) (Equal Protection claims require a plaintiff to "articulate which [other persons] were similarly situated or how he is similar to these [persons]").

Thus, without more, Patton's vague and conclusory allegations that Defendants have discriminated against him are insufficient to state any plausible claim for relief. *Bell Atlantic Corp.*, 550 U.S. at 553-56 & n.3 ("labels and conclusions" are insufficient to state a claim for relief).

///

17

## H. ADA Claims

Patton also invokes the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, at least twice in his FAC. (*See* FAC at 9, 10.) The ADA applies in the prison context. *See* 42 U.S.C. § 12131(1)(B); *U.S. v. Georgia* 546 U.S. 151, 154 (2006). In order to state a claim under Title II of the ADA, however, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Correctional Center*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). Patton's FAC is devoid of any factual allegations to support an ADA claim.

Moreover, Patton may not pursue an ADA claim against any of the named Defendants because there is no individual liability under Title II. *Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA . . . ."); *see also Heinke v. County of Tehama Sheriff's Dept.*, No. CVI S-12-2433 LKK/KJN, 2013 WL 3992407, at *7 (E.D. Cal. Aug.1, 2013). The ADA's definition of "public entity" does not include individuals. *See Hardwick v. Curtis Trailers, Inc.*, 896 F. Supp. 1037, 1038-39 (D. Or. 1995) (citing *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583 (9th Cir. 1993)) (individual liability is precluded under ADA Title II); *see* also 42 U.S.C. § 12131(1); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); *Weathers v. Hagemeister-May*, No. 1:13-CV-01932-AWI, 2014 WL 309444, at *4 (E.D. Cal. Jan. 28, 2014).

For these reasons, Patton's FAC fails to state an ADA claim upon which relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2)(b)(ii), 1915A(b)(1).

## III. Leave to Amend

Although Patton has twice tried and failed to state any claim upon which § 1983 relief can be granted, the Court will give him one more chance to amend because it is not yet absolutely clear that his pleading deficiencies cannot be cured by amendment. *See Lopez*, 203 F.3d at 1130 (noting leave to amend should be granted when a complaint is dismissed under 28 U.S.C. § 1915(e) "if it appears at all possible that the plaintiff can correct the defect"); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citing *Ferdik*, 963 F.2d at 1261).

## IV. Conclusion and Order

For the reasons explained, the Court **DISMISSES** Patton's First Amended Complaint (ECF No. 4) in its entirety for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) and **GRANTS** him 45 days leave from the date of this Order in which to file a Second Amended Complaint which cures all the deficiencies of pleading noted.

Patton's Second Amended Complaint must comply with Fed. R. Civ. P. 8(a) and be complete by itself without reference to either of his previous pleadings. Defendants not named and any claim not re-alleged will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Patton's Second Amended Complaint again fails to state any claim upon which § 1983 relief can be granted, his case will be dismissed pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A without further leave to amend. *See Rupert v. Bond,* 771 F. App'x 777, 778 (9th Cir. 2019) (citing *Chodos v. West Publ'g Co.,* 292 F.3d 992, 1003 (9th Cir. 2002) (district court's discretion to deny leave to amend is particularly broad when it has afforded plaintiff one or more opportunities to amend)).

///

If Patton fails to file a Second Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated: September 9, 2019

Hon. William Q. Hayes
United States District Court